

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00142-CR

JERONIMO MIGUEL CABRERA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2018F00341

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

A jury convicted Jeronimo Miguel Cabrera of aggravated sexual assault of a child and assessed his sentence at sixty-five years' incarceration.[1]  In a single appellate issue, Cabrera challenges the trial court's determination of the outcry witness.  We affirm because the trial court was within its discretion in deciding the appropriate outcry witness.

The child victim, Ruby Smith,[2] testified that she was lying on her bed watching television when Cabrera entered the room and lay down on the bed with her.  Ruby fell asleep and awakened to Cabrera touching her in the "bad part" underneath her panties.  Ruby then described further abuse by Cabrera in which he continued to touch her and jump on her.  The abuse was reported to law enforcement, and a victim interview was scheduled with the Children's Advocacy Center (CAC) the following week.

Article 38.072 of the Texas Code of Criminal Procedure defines an outcry witness as "the first person, 18 years of age or older, . . . to whom the child . . . made a statement about the offense or extraneous crime, wrong, or act" and provides an exception to the hearsay rule for such a witness when certain requirements are met.  TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3), (b) (Supp.).  To be admissible under the statute, among other things, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88,

---

[1]*See* TEX. PENAL CODE ANN. § 22.021.  In two cases that were consolidated for trial with this case, Cabrera appeals his convictions of two counts of indecency with a child by sexual contact.  We address these appeals in opinions released the same date as this opinion in our cause numbers 06-19-00143-CR and 06-19-00144-CR.

[2]We refer to the child victim by pseudonym to protect her anonymity.  *See* TEX. R. APP. P. 9.10.

91 (Tex. Crim. App. 1990)). As the Texas Court of Criminal Appeals has emphasized,

> In picking the particular wording of the "first person" requirement, the legislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children. . . . The portion of the statute catering to the hearsay prohibition demands that only the "first person" is allowed to testify. But the societal interest in curbing child abuse would hardly be served if all that "first person" had to testify to was a general allegation from the child that something in the area of child abuse was going on at home. Thus we decline to read the statute as meaning that any statement that arguably relates to what later evolves into an allegation of child abuse against a particular person will satisfy the requisites of [the statute]. The statute demands more than a general allusion of sexual abuse.

*Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The statute requires that the trial court conduct a hearing outside the presence of the jury to ensure that the "statement is reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM PROC. ANN. art. 38.072, § 2(b)(2) (Supp.).

The trial court has broad discretion to determine who is qualified to act as the proper outcry witness. *See Garcia*, 792 S.W.2d at 92. We therefore apply an abuse-of-discretion standard in reviewing a trial court's decision to admit testimony from an outcry witness. *Id*.; *see Eldred v. State*, 431 S.W.3d 177, 182 (Tex. App.—Texarkana 2014, pet. ref'd). When the trial court's ruling is within the "zone of reasonable disagreement," it will not be reversed for an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

At issue here is whether, under Article 38.072, Savannah Quinn, a forensic interviewer with the CAC, was the first person to whom Ruby made her outcry. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3). The trial court conducted a hearing outside of the presence of the jury to make this determination. At the hearing, Quinn testified that she interviewed Ruby, who was

3

then five years old. During the interview, Ruby told Quinn that Cabrera "used his hand to touch her jayjay, which she used to refer to as her vagina, and then she talked about him using his jayjay to touch her jayjay and said that he jumped on top of her and it hurt." Quinn used anatomically correct drawings and dolls to assist Ruby in describing the abuse in detail. Ruby told Quinn that the abuse happened every time that Cabrera came over to her house and that she was aged five at each occurrence. Ruby further related that each occurrence of abuse took place at her mother's house in Ruby's bedroom.

On cross-examination, Quinn indicated that the case was referred to the CAC by the Hughes Springs Police Department. Quinn was provided a copy of the police report, which indicated that Ruby told her mother that Cabrera touched her inappropriately. The report did not indicate that Ruby told her mother where or when the touching occurred or that she provided her mother with any details about the alleged touching. The investigating officer did not solicit any information regarding the alleged abuse from Ruby. The report further indicated that "these issues" would be dealt with by the CAC interviewer.

Ruby's mother (Mother), who also testified at the outcry hearing, stated that Ruby's abuse was reported to the police in October 2018. When Officer April Hamilton responded to the report of suspected abuse, Mother told Hamilton that Ruby stated that she had been touched "down there." Mother elaborated on this statement by explaining that, on the same day the abuse was reported to the police, she asked Ruby if "anyone ever touched [her] jayjay"? When Ruby did not answer that question, Mother persisted, asking, "Ruby, who touched you?" Ruby responded, stating, "My uncle. Not the one that calls me Santa Claus, but your brother . . . ." Mother did not

4

ask Ruby any additional questions about the abuse, and Ruby did not offer additional information. Although Mother did not recall Ruby making any statements about the abuse to Hamilton, the police report of the incident indicates that Ruby told Hamilton, "[M]y uncle put his arm around me and touched me down there."

Cabrera contends that Quinn was not the proper outcry witness because Ruby made discernible statements to Mother and Hamilton before she was interviewed by Quinn. "If the State presents evidence that a person is a proper outcry witness, the burden to rebut this evidence then falls on the defendant." *Eldred*, 431 S.W.3d at 184 (citing *Garcia*, 792 S.W.2d at 91). As was true in *Eldred*, the record here contains some "rebuttal evidence relating to the propriety of [Quinn] as an outcry witness." *Id*. The evidence was that Ruby told Mother and Hamilton that Cabrera touched her "down there," but did not specifically tell either of them that he touched her vagina. She did not respond to Mother's question of whether anyone touched her "jayjay."[3]

Although Ruby alluded to inappropriate sexual behavior when she made the statements to Mother and Hamilton, she did not describe the alleged sexual abuse in a discernable manner. The only details contained in the statements were the identity of the alleged abuser and a general statement regarding his conduct. As the Texas Court of Criminal Appeals has acknowledged, "The parlance of children is often not exact, and generalities can be misleading." *Garcia*, 792 S.W.2d at 91. Ruby's statements to Mother and Hamilton were general allegations "that something in the area of child abuse" had taken place. *Id.* This evidence was therefore not sufficient to rebut the

---

[3]Although Mother testified that she believed that Ruby understood "jayjay" to mean vagina, Ruby did not tell Mother what Ruby meant by "jayjay."

State's evidence that Quinn was the proper outcry witness.

We conclude that the trial court acted within its discretion in permitting Quinn to testify as the outcry witness. We overrule this point of error.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 11, 2020
Date Decided:     February 12, 2020

Do Not Publish